IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 12-cv-01711-PAB-CBS

MADINA BUHENDWA,

      Plaintiff,

v.

REGIONAL TRANSPORTATION DISTRICT,

      Defendant.

---

## ORDER

---

      This matter is before the Court on the Motion to Dismiss [Docket No. 13] filed by defendant Regional Transportation District ("RTD").  Defendant requests that the Court dismiss plaintiff Madina Buhendwa's complaint pursuant to Fed. R. Civ. P. 12(b)(6).  The Court has jurisdiction over this case pursuant to 28 U.S.C. § 1331.

      Plaintiff's *pro se* amended complaint [Docket No. 12] lacks coherence; however, the Court reads it to allege the following facts, which are taken as true.  Plaintiff is a native of Zaire[1] and of African ethnicity.  Plaintiff alleges that, on May 25, 2012, Benjamin Norman operated an RTD bus while plaintiff was in the "prohibited area," in violation of federal regulations.[2]  Docket No. 12 at 5, ¶ 30.  As a result of Mr. Norman's

---

[1]Between 1971 and 1997, the Democratic Republic of Congo was known as the nation of Zaire.

[2]Plaintiff also alleges that she was struck by a bus in 2007, Docket No. 17 at 6, ¶ 14, and it appears that, on July 1, 2010, she fell while riding on an RTD bus.  *Id*. Because the July 1, 2010 and May 25, 2012 incidents are factually similar, the Court will discuss these incidents jointly when analyzing plaintiff's § 1981 and Title VI claims.

actions, plaintiff alleges that she suffered from various injuries including, but not limited

to, head trauma. *Id*. Plaintiff asserts that, although RTD admitted that its employees

acted negligently, it refused to pay for the medical treatment she received for her

injuries.[3] *Id*. at 4, ¶ 17. Plaintiff alleges, however, that RTD has agreed to pay the

medical expenses for white individuals injured because of negligent driving by RTD

employees. *Id*. at 3-5, ¶¶ 14-15, 18, 24-25. In addition, plaintiff alleges that Jim

Stadler, an attorney who represents RTD, lied to a state court judge during the

prosecution of her state court case. *Id*. at 4-5, ¶¶ 22, 27. Plaintiff claims that Mr.

Stadler has a pattern of lying in order to shield RTD from liability in state court cases.

*Id*. at 2, ¶ 3, and 6, ¶ 31.

    As a result of these events, plaintiff brings four claims against RTD. Plaintiff's

first claim alleges that RTD violated her Fourteenth Amendment right to equal

protection and due process pursuant to 42 U.S.C. § 1983; her second claim asserts

---

[3]Plaintiff also claims that RTD refused to pay for her medical expenses after she suffered injuries as a result of negligent driving by RTD employees in April 2007 and on July 1, 2010. *See* Docket No. 12 at 1-2, ¶¶ 1-3. However, the 2007 claim is not properly before the Court. The 2007 case was dismissed with prejudice. Docket No. 12 at 2, ¶ 3. Moreover, because plaintiff filed her initial complaint in this case on July 2, 2012 [Docket No. 1], the July 1, 2010 incident appears to be time barred because it is outside the statute of limitations period. *Hunt v. Bennett*, 17 F.3d 1263, 1265 (10th Cir. 1994) (noting that actions asserted under 42 U.S.C. § 1983 are subject to the general personal injury limitation period of the state in which the action arose). The appropriate statute of limitation for § 1983 actions arising in Colorado is two years. *Id*. at 1266; Colo. Rev. Stat. § 13-80-102. Although a statute of limitations bar is an affirmative defense, it may be resolved on a Rule 12(b)(6) motion to dismiss "when the dates given in the complaint make clear that the right sued upon has been extinguished." *Aldrich v. McCulloch Props., Inc.*, 627 F.2d 1036, 1041 n. 4 (10th Cir. 1980). Plaintiff's complaint is devoid of any basis for equitable tolling or application of Colorado's revival statute, Colo. Rev. Stat. § 13-80-111. Nevertheless, the Court will consider allegations regarding the July 1, 2010 incident in this order.

that RTD interfered with her contractual rights in violation of 42 U.S.C. § 1981; her third claim contends that RTD tortiously interfered with her contractual rights; and her fourth claim avers that RTD treated her differently than similarly situated individuals because of her race in violation of Title VI of the Civil Rights Act of 1964 ("Title VI"), 42 U.S.C. 2000d *et seq.*  Docket No. 12 at 6-9.  On August 20, 2012, RTD filed a motion to dismiss [Docket No. 13] requesting that the Court dismiss plaintiff's complaint for failure to state a claim.

In assessing whether plaintiff's complaint states a claim for relief, the Court "must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff."  *Alvarado v. KOB–TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007) (quotation marks and citation omitted).[4]  Because plaintiff is pro se, the Court must construe the complaint liberally.  *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir.1991).  However, a broad reading of plaintiff's complaint "does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based . . . conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based."  *Hall*, 935 F.2d at 1110.

---

[4]Generally, "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (citation omitted).  The "plausibility" standard requires that relief must plausibly follow from the facts alleged, not that the facts themselves be plausible.  *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008).  Furthermore, in addition to the complaint, the Court "may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity."  *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002).

3

To state a claim under 42 U.S.C. § 1983, plaintiff must allege that she was deprived of a right "secured by the Constitution or laws" of the United States and that this deprivation was committed under color of state law. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999). For an act to be under color of law, "[f]irst, the deprivation of [a federal right] must be caused by the exercise of some right or privilege created by the State . . . [s]econd, the party charged with the deprivation must be a person who may fairly be said to be a state actor. This may be because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982); *see also Scott v. Hern*, 216 F.3d 897, 906 (10th Cir. 2000). It is plaintiff's burden to "plead, and ultimately establish, the existence of 'a real nexus' between the defendant's conduct and the defendant's 'badge' of state authority in order to demonstrate action was taken 'under color of state law.'" *See Beedle v. Wilson*, 422 F.3d 1059, 1074 (10th Cir. 2005) (citation omitted).

With respect to Mr. Stadler, plaintiff argues that he violated her Fourteenth Amendment right to due process and equal protection when he allegedly lied and made derogatory comments about her to the court during an unspecified state court case she filed.[5] Docket No. 12 at 5, ¶ 28; Docket No. 17 at 7, ¶ 17. Plaintiff contends that Mr. Stadler's alleged misrepresentations constitute state action because he acted as an attorney for RTD. Docket No. 17 at 10-11. Plaintiff, however, does not allege facts

---

[5]To the extent plaintiff asserts a Fifth Amendment due process violation, she does not have a viable Fifth Amendment claim because the Fifth Amendment only applies to federal action. *See Smith v. Kitchen*, 156 F.3d 1025, 1028 (10th Cir. 1997).

sufficient to qualify Mr. Stadler as a state actor based on his representation of RTD. The "vast weight of authority" holds that "private attorneys, by being officers of the court, do not act under color of state law within the meaning of section 1983." *Barnard v. Young*, 720 F.2d 1188, 1889 (10th Cir. 1983). Plaintiff does not allege that Mr. Stadler is a government employee[6] or that he was acting in something other than a professional and representative capacity when he made these representations to the judge. As such, plaintiff fails to sufficiently allege that Mr. Stadler acted under the color of state law given that a private attorney is not a state actor for purposes of § 1983. *See Beedle*, 422 F.3d at 1073 ("The conduct of an attorney acting in his professional capacity while representing his client does not constitute action under color of state law for the purposes of § 1983.") (citation omitted); *Anderson v. Kitchen*, 389 F. App'x 838, 841 (10th Cir. 2010) (noting that private attorneys' "actions in allegedly misleading a state court judge did not constitute joint action between defendants and the judge").[7]

---

[6]Even assuming that Mr. Stadler is a government employee, it is "well settled that an otherwise private tort is not committed under color of law simply because the tortfeasor is an employee of the state." *Jojola v. Chavez*, 55 F.3d 488, 493 (10th Cir. 1995) (citation and quotation omitted). Constitutional "standards are invoked only when it can be said that the State is *responsible* for the specific conduct of which the plaintiff complains." *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982). Plaintiff alleges that Mr. Stadler lied during court proceedings; she makes no allegation that these lies were within the scope of Mr. Stadler's job duties or were known to RTD. Plaintiff does not name Mr. Stadler as a defendant.

[7]*See also Torres v. First State Bank of Sierra Cnty.*, 588 F.2d 1322, 1325-27 (10th Cir. 1978) (noting that the under color of law requirement is not met "where the only infirmities [alleged] are the excesses of the court order itself, subject to immediate modification by a court having jurisdiction over the parties, and subject to the normal processes of appeal").

It is difficult to discern any claim against Dr. Stephen Schmitz in the amended complaint or in plaintiff's response to the motion to dismiss.  But, assuming that plaintiff's references to Dr. Schmitz are a component of her claims against RTD, plaintiff fails to establish that Dr. Schmitz acted under color of law.  Although plaintiff alleges Dr. Schmitz lied during the state court proceedings, she does not allege that Dr. Schmitz exercised power he "possessed by virtue of state law and made possible only because [he] is clothed with the authority of state law." *West v. Atkins*, 487 U.S. 42, 49 (1988) (citation omitted); *see also Johnson v. Rodrigues*, 293 F.3d 1196, 1202-03 (10th Cir. 2002) (describing the tests used to determine when private actions may be attributed to the state).  Plaintiff's complaint is devoid of any information with regard to Dr. Schmitz other than the fact that he allegedly lied.[8]  Hence, plaintiff has not sufficiently alleged facts showing that Dr. Schmitz acted under color of state law.  *West*, 487 U.S. at 49.

Plaintiff alleges that the state court judge in an unspecified case violated her Fourteenth Amendment right to equal protection and due process because he did not rule on her unopposed motion for an independent medical evaluation by a Board Certified Neurologist.  Docket No. 17 at 8-9.  Plaintiff does not link the judge to RTD in any manner other than that he presided over a case she filed against RTD.  Plaintiff has not named the judge as a defendant and asserts no claim against him.  Moreover, plaintiff cannot assert a claim against a state court judge in his individual capacity in any

---

[8]Plaintiff attached a grievance she filed against Dr. Schmitz with the Colorado State Board of Psychologist Examiners, Docket No. 12-2 at 25-27; however, this grievance was dismissed for failure to state a claim.  Docket No. 1 at 71.  Plaintiff also attached a pleading from *Keranen v. RTD*, Denver District Court Case No. 02-cv-1254, that indicates that, at least at the time, Dr. Schmitz worked for Neuropsychological Consultants, LLC, i.e. not for RTD.  Docket No. 12-2 at 45-49.

event because judges are entitled to judicial immunity.[9]  *See Hunt v. Bennett*, 17 F.3d

1263, 1266 (10th Cir.1994) ("[A] state judge is absolutely immune from § 1983 liability

except when the judge acts in the clear absence of all jurisdiction.") (quotation and

citation omitted); *see also Mireles v. Waco*, 502 U.S. 9, 12-13 (1991) (per curiam) ("If

judicial immunity means anything, it means that a judge will not be deprived of immunity

because the action he took was in error or was in excess of his authority.") (quotation,

citation and alteration omitted).  Even if the Court allowed plaintiff to amend the

complaint to add the state court judge as a defendant, because plaintiff's claims against

the state court judge would be based on the exercise of his judicial duties, he would be

entitled to absolute judicial immunity from suit.  *Stein v. Disciplinary Bd. of Supreme Ct.

of N.M.*, 520 F.3d 1183, 1195 (10th Cir. 2008).

Accordingly, the Court will dismiss plaintiff's equal protection and due process

claims for failure to state a claim.

In her second claim, plaintiff alleges that RTD unlawfully interfered with her right

to make and enforce a contract in violation of § 1981.  Docket No. 12 at 7.  Plaintiff

claims that the purchase of a bus ticket is a contract between passengers and RTD.

Docket No. 17 at 11-13, ¶¶ 28, 29.  Plaintiff alleges that the injuries she suffered as a

---

[9]Judicial immunity only applies to personal capacity claims.  *Crowe & Dunlevy, P.C. v. Stidham*, 640 F.3d 1140, 1156 (10th Cir. 2011).  However, to the extent plaintiff alleges claims against the state court judge in his official capacity, those are barred by the Eleventh Amendment.  *See Will v. Mich. Dep't. of State Police*, 491 U.S. 58, 71 (1989) (noting that § 1983 did not abrogate the Eleventh Amendment or provide a jurisdictional basis for suit against a state official acting in his or her official capacity); *Buchwald v. Univ. of New Mexico Sch. of Med.*, 159 F.3d 487, 495 (10th Cir.1998).

result of RTD's negligence have interfered with her ability to contract for future employment because she cannot complete her college degree. *Id.* at 13.

To establish a prima facie case of discrimination under § 1981 in a non-employment context, plaintiff must show: (1) that she was a member of a protected class; (2) that defendant had the intent to discriminate on the basis of her race; and (3) that the discrimination interfered with a protected activity as defined in § 1981.[10] *Hampton v. Dillard Dep't Stores, Inc.*, 247 F.3d 1091, 1102 (10th Cir. 2001).  Section 1981 protects individuals from discrimination during "all phases and incidents of the contractual relationship," including the making of a contract, termination, and the enjoyment of all benefits, privileges, and conditions of the contractual relationship. *Barfield v. Commerce Bank*, *N.A.*, 484 F.3d 1276, 1278-1280 (10th Cir. 2007) (explaining that Congress included Subsection b as part of 1991 Amendments to

---

[10]Section 1981 states, relevant part, that:

a) Statement of equal rights;
All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

(b) "Make and enforce contracts" defined
For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

42 U.S.C. § 1981(a), (b).

§ 1981 to ensure that the phrase to "make and enforce" contracts would provide broad contractual protection).

RTD contends that plaintiff has not identified the consideration exchanged by the parties to create a contractual relationship.  Docket No. 13 at 7.  The Court finds that plaintiff has sufficiently alleged the existence of a contract between herself and RTD.  In making this determination, the Court considers Colorado law.  *See Barfield*, 484 F.3d at 1278-80 (noting that courts should look to the relevant state law to determine the contours and existence of a contract for purposes of § 1981).  A contract is formed when an offer is made, accepted, and  supported by consideration.  *Marquardt v. Perry*, 200 P.3d 1126, 1129 (Colo. App. 2008).  "Consideration may be defined as 'a benefit received or something given up as agreed upon between the parties.'"  *Compass Bank v. Kone*, 134 P.3d 500, 502 (Colo. App. 2006) (quoting CJI-Civ. 4th 30:5 (1998)).  Acceptance of an offer is generally defined as words or conduct that manifests an intent to accept an offer.  *Scoular Co. v. Denney*, 151 P.3d 615, 619 (Colo. App. 2006).  In this case, plaintiff's purchase of a bus ticket created a contract for transportation services between herself and RTD.  *See Hampton*, 247 F.3d at 1102 (noting that § 1981 has been expanded beyond employment contracts to other services such as the retail sector and the restaurant industry); *Sawyer v. Sw. Airlines Co.*, 243 F. Supp. 2d 1257, 1272 (D. Kan. 2003) (noting that, in transportation cases, the enjoyment of all benefits, terms, and conditions includes only being treated like other passengers during transportation).

Plaintiff here does not allege that RTD interfered with her ability to make, perform, modify, or terminate her contract for transportation services because RTD did not restrict plaintiff's access to its public transportation services.  42 U.S.C. § 1981(b); *Carter v. N.J. Transit*, 2009 WL 2843887, at *3 (D.N.J. Sept. 1, 2009) (plaintiff did not sufficiently allege a § 1981 claim because plaintiff's access to the bus was not restricted, she had a bus pass which she frequently used, and she did not allege that she was prevented from using the buses).  Similarly, plaintiff does not contend that RTD interfered with her enjoyment of the benefits, privileges, terms, and conditions of her contract for transportation services because she does not allege that the driver operated the bus while she was in the prohibited area because of her race or that she was subject to racial abuse by RTD employees during the bus ride.  *See, e.g., Sawyer*, 243 F. Supp. 2d at 1271-72 (finding that it is a jury question whether allegedly racist comments by a flight attendant when African-American passengers were in the plane aisle deprived them of the contractual right secured by § 1981).

Instead, plaintiff claims that RTD breached its duty of care when it violated federal regulations and refused to compensate her for the injuries she sustained because of her race.  However, allegations that RTD acted negligently and breached its duty of care are not actionable under § 1981 because a breach of the duty of care is not a claim pursuant to contract.  *See Hampton*, 247 F.3d at 1101 ("the action interfered with must be based on a contract") (citation omitted).  Moreover, the allegedly negligent operation of a public bus does not establish intentional discrimination.  *Id*. at 1103 (to establish a § 1981 claim plaintiff must show "defendant intentionally interfered with

10

plaintiff's right to enjoy the benefits and privileges . . . [and] plaintiff's race was a motivating factor").

Additionally, plaintiff argues that RTD's failure to pay for her medical expenses interfered with her ability to enter into future employment contracts. Docket No. 12 at 6; Docket No. 17 at 13. However, § 1981 does not protect a plaintiff's ability to enter into future contracts. *Morris v. Office Max, Inc.*, 89 F.3d 411, 414-15 (7th Cir. 1996) ("claim for interference with the right to make and enforce a contract must allege the actual loss of a contract interest, not merely the possible loss of future contract opportunities"). In order to state a claim of interference with the right to make or enforce a contract pursuant to § 1981, a plaintiff must have rights under an existing contract at the time of the complained of activity, and not merely possible or future contract opportunities. *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006) (finding that § 1981 offers relief when racial discrimination blocks the creation as well as impairs an existing contractual relationship, so long as the plaintiff has rights under the existing or proposed contractual relationship); *see Harris v. Allstate Ins. Co.*, 300 F.3d 1183, 1195 (10th Cir. 2002). Because plaintiff's contract with RTD was one for transportation services, which RTD fulfilled, plaintiff's allegations that her injuries prevent her from entering into future employment contracts do not state a claim for relief pursuant to § 1981. *See Hampton*, 247 F.3d at 1118 (affirming summary judgment where claimant did not make or attempt to make a purchase from defendant). Because plaintiff's contract with RTD is separate and independent of her potential future employment contracts, plaintiff does not sufficiently allege that RTD interfered with her contractual rights, and the Court will dismiss her § 1981 claim. *Domino's Pizza*, 546 U.S. at 476.

In her third claim for relief, plaintiff asserts that RTD discriminated against her in violation of Title VI. Docket No. 12 at 8-9. Title VI prohibits discrimination on the basis of race or national origin by any entity receiving federal financial assistance. *See* 42 U.S.C. § 2000d. Title VI only proscribes intentional discrimination and "[p]rivate individuals may sue to enforce § 601 of Title VI and obtain both injunctive relief and damages." *Alexander v. Sandoval*, 532 U.S. 275, 279 (2001).

To establish a prima facie case of discrimination under Title VI, plaintiff must show that: (1) she is a member of a protected class; (2) she suffered adverse action; and (3) she was treated less favorably than similarly situated individuals not members of her protected class. *Silva v. St. Anne Catholic Sch.*, 595 F. Supp. 2d 1171, 1182 (D. Kan. 2009)*; Buhendwa v. Univ. of Colo. at Boulder*, 214 F. App'x 823, 828 (10th Cir. 2007). In this case, RTD does not dispute that it receives federal financial assistance. However, RTD contends that plaintiff has not sufficiently alleged that she suffered an adverse action or that she is similarly situated to other individuals. Docket No. 13 at 9.

In order to show that she was treated differently from other similarly situated passengers, plaintiff alleges that several white individuals who were struck by RTD buses received compensation for the injuries they suffered. However, because plaintiff sustained her injuries when she fell inside a moving bus, Docket No. 12 at 2, ¶ 9; Docket No. 17 at 6, ¶ 14, she is not similarly situated to individuals who were struck by RTD buses as pedestrians or motorists. *See Jennings v. City of Stillwater*, 383 F.3d 1199, 1214 (10th Cir. 2004) ("Inevitably, the degree to which others are viewed as similarly situated depends substantially on the facts and context of the case"). Given that plaintiff is not similarly situated, she has not sufficiently alleged a prima facie case

12

of disparate treatment.  *Buhendwa*, 214 F. App'x at 828.  Moreover, none of the

documents attached to plaintiff's complaint establishes that RTD voluntarily paid for the

medical treatment of other individuals.  For example, Edison Kee won a jury award for

damages after a trial.  Docket No. 12-2 at 34.  The article submitted about Jacquline

LaDaga does not state who paid for her medical treatment.  *See* Docket No. 1 at 51-52.

Finally, Patricia Henisse appealed her case to the Colorado Supreme Court.  *See*

*Henisse v. First Trans., Inc.*, 247 P.3d 577 (Colo. 2011) (finding that bus driver of

private company contracting with RTD is not a public employee under Colorado law).

Based on a review of plaintiff's factual allegations, she has not shown that she was

similarly situated to individuals struck by RTD vehicles.  Because plaintiff does not show

that she was treated differently from similarly situated individuals, the Court will not

address whether she was subject to an adverse action and will dismiss plaintiff's Title VI

claim for failure to state a claim.  *See Buhendwa*, 214 F. App'x at 828.

Plaintiff also asserts a state law claim against defendant, but does not allege

any basis for the Court to exercise diversity jurisdiction over this claim.  Given that the

federal claims will be dismissed, the Court declines to exercise supplemental

jurisdiction over the state law claim.  *See* 28 U.S.C. § 1367(c)(3); *see also Bauchman v.*

*West High School*, 132 F.3d 542, 549 (10th Cir. 1997) ("If federal claims are dismissed

before trial, leaving only issues of state law, 'the federal court should decline the

exercise of jurisdiction by dismissing the case without prejudice.'") (quoting *Carnegie-*

*Mellon University v. Cohill*, 484 U.S. 343, 350 (1988)); *cf. Brooks v. Gaenzle*, 614 F.3d

1213, 1230 (10th Cir. 2010) ("'Notions of comity and federalism demand that a state

court try its own lawsuits, absent compelling reasons to the contrary'") (quoting *Ball v. Renner*, 54 F.3d 664, 669 (10th Cir. 1995)).

For the foregoing reasons, it is

**ORDERED** that Defendant's Motion to Dismiss Plaintiff's Amended Complaint and Jury Demand [Docket No. 13] is **GRANTED**.  It is further

**ORDERED** that plaintiff's claims pursuant to 42 U.S.C. § 1983, 42 U.S.C. § 1981, and Title VI are dismissed for failure to state a claim.  It is further

**ORDERED** that, pursuant to 28 U.S.C. § 1367(c)(3), plaintiff's state law claim is dismissed without prejudice.  It is further

**ORDERED** that this case is closed in its entirety.

DATED March 22, 2013.

BY THE COURT:

 s/Philip A. Brimmer                                 
PHILIP A. BRIMMER
United States District Judge

14